EILEEN WHITE, an Infant, by JOHN P. WHITE, Her Guardian ad Litem, and JOHN P. WHITE, Respondents, v. THE BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

Second Department, February 5, 1937.

*William S. Gaud, Jr.* [*Paul Windels, Corporation Counsel,* and *Paxton Blair* with him on the brief], for the appellant.

*S. Michael Ress,* for the respondents.

HAGARTY, J. This is a joint action by the infant plaintiff and her father to recover damages for injuries sustained by the infant when a class room door in Public School No. 109, Queens Village, of which she was a pupil in the kindergarten class, closed on one of the fingers of her left hand.

At the time of the accident, on September 20, 1928, the infant was five years and five months old. She had received permission from her teacher to leave the class room, and on her return " the door slammed back on my finger." The proof was that there was no check or spring on the door, and counsel for the plaintiffs stated on the trial that the claim of negligence was based solely on the absence of a door check on the door. That theory is consistent with the complaint, in which the negligence alleged is " that the defendant failed and neglected to provide the necessary and suitable appliances to make safe the handling of such heavy doors by children."

The proof adduced on behalf of the defendant established the fact that the door involved in this accident was the standard class room door in use in 160 schools in the borough of Queens; that the specifications under which the school was built were the standard specifications used in 1928 for the construction of all public schools throughout the city; that they did not require door checks on class room doors, and that no revision in the specifications with reference to the hardware on class room doors had been made since 1928.

Assuming that, in the absence of such a defense, it was for the jury to say whether the defendant was negligent in failing to equip the class room door with a check (*White* v. *Board of Education,* 240 App. Div. 989), we are of opinion that on the defense established the defendant is relieved of liability.

The board of education is a governmental agency of the State and to it is delegated the power and duty of controlling the schools in the city; but, as such, it is not absolved from liability for its own negligence to the extent of funds vested in it by statute or which it is empowered thereby to raise by local taxation. (*Herman* v. *Board of Education,* 234 N. Y. 196.) The negligence assigned is the absence of a door check on the class room door. Such absence and the happening of the accident establish plaintiffs' theory.

There is no proof here that the door is unusually heavy, nor is there any claim that it was out of order or otherwise defective. So it follows that, if the defendant is to be held liable at all, it is for negligence in adopting the plans and specifications for the construction of the school without provision for a check on the class room doors of the kindergarten department. But the defendant acted *quasi*-judicially in the exercise of its judgment and of the discretionary power vested in it by the State as to what would best serve the public interest; and for an erroneous estimate of the public needs it cannot be held liable. (*Urquhart* v. *City of Ogdensburg*, 91 N. Y. 67; *Watson* v. *City of Kingston*, 114 id. 88; *Paine* v. *Village of Delhi*, 116 id. 224; *Pitman* v. *City of New York*, 141 App. Div. 670; *Treadwell* v. *City of Yonkers*, 192 id. 421.)

*Stern* v. *International R. Co.* (220 N. Y. 284) and the cases therein cited are not to the contrary. The doctrine of that case is that a municipality may not excuse itself from a charge of negligence as to the condition of public places merely by claiming that it acted judicially in determining to leave them in a dangerous condition. Plaintiff's intestate was killed by coming in contact with a trolley pole erected in the center of the highway, not by defendant city, but by the railway company, creating a needlessly dangerous condition and violating the implied condition of the franchise. So, too, in the cases cited in the opinion, the holding does not go beyond denying the municipality the right to excuse itself by the claim that it had acted judicially in determining to leave public places in an obviously dangerous condition.

In my opinion, the door here, in its condition on the day the accident happened, was not inherently or obviously dangerous because it lacked a stop. Of course, the accident probably could not have happened had there been a stop, but the mere happening of the accident does not indicate that it should have been anticipated. For untold generations school children have been passing without accident through doors not equipped with stops.

The judgment should be reversed on the law, with costs, and complaint dismissed, with costs.

LAZANSKY, P. J., CARSWELL, DAVIS and CLOSE, JJ., concur.

In an action by daughter and father to recover for personal injuries and loss of services respectively, judgment in favor of plaintiffs reversed on the law, with costs, and complaint dismissed, with costs.